## TOMICH v. WILLIS.
### No. 5065.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

George Thurber, of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

MILLS, Judge.

This is one of those vexatious cases wherein the facts are in dispute and, because of almost incredibly loose business methods, not susceptible of absolute proof by either side. We can only decide the case by taking the few established facts and accepting the story most consistent with them.

The trouble arose out of a transaction involving the sale from Tomich to Willis of three carloads of potatoes. Tomich represents a concern in Nebraska, while Willis conducts a seed and fertilizer business at Atlanta, Tex. He is brought into court by a writ of attachment.

It is settled that Willis ordered the three cars, one arriving January 10, 1934, and two on the following February 13th. The price of the first car was $861.25, and of the latter two, $775 and $800. The first two mentioned were accepted by Willis, but, for some confused reason, Tomich intercepted the $800 car and had it shipped to Shreveport. The whole controversy is over what happened to this car. At some time during the endless conferences and heated disputes on the streets, in the hotels, and in the offices of the attorneys, Willis gave to Tomich a note for $500, dated April 9, 1934. The present suit is on this note.

Plaintiff claims that after its diversion, Willis had nothing to do with the $800 car, and that the note was given in settlement of the balance on the two cars accepted by Willis. Willis contends that the note was part of a general settlement and adjustment of differences; that a written agreement of settlement on the first two cars was drawn up and signed by him and Tomich; that all matters were adjusted in that settlement, which showed a balance of $245.10 due Tomich, for which Willis gave his check. The written agreement and the check are filed in evidence. Tomich denies the execution of the instrument and his signature to it. There are several of his signatures admitted to be correct in the record. A comparison leaves absolutely no doubt in our mind that the signature is authentic, and that he executed the agreement, which disposes of every detail concerning the first two cars. He admits that he indorsed and cashed the check, but claims that it was in payment of 200 sacks of beans involved in the settlement on the third car. We cannot accept that explanation. The check was given before the beans were delivered. It bears on its face the notation, "Acct. in full to date." Accepting his statement, the beans, admittedly figured by the sack, would have been priced at $1.2255 each. We do not believe that beans by the sack were ever priced at such fractions.

Willis explains the note thus: He says that the last car, after being diverted, was sold to W. G. Boogaerts by Tomich.

Boogaerts took advantage of the situation and would not pay Tomich, using the excuse that, because of the dispute, he was not sure who was entitled to the proceeds. Willis agreed to collect from Boogaerts for Tomich, who accordingly, solely for the purpose of collection, executed an affidavit to the effect that Willis was the owner of the car.

Tomich was not a trusting soul. Realizing that after the execution of the affidavit he was unprotected in the amounts Willis might collect, he demanded as security the execution of the note sued on.

To avoid a continuance, plaintiff admitted that Boogaerts would testify that Tomich and Willis signed a settlement of some kind; that upon the authority of the affidavit he delivered to Willis 61 sacks of potatoes, 200 bushels of peas, accounts amounting to $144.95, and a check for $228.55. Of this, Tomich admits that Willis delivered to him the potatoes and the accounts, but denies that he received the check or the price of the peas. Willis claims, as to these two items, that he paid Tomich $200 in cash for the peas; that Tomich would not accept the Boogaerts check, so Willis cashed it and gave Tomich the money. In this Willis is corroborated by an employee who was with him and who says he saw the money paid to Tomich for both the peas and check.

It will be seen that Willis' story is in accord with the proven facts and documents. Its weakness is that he has no receipt for the cash, and that his note remained in possession of Tomich. Willis' explanation of his failure to get the note is, Tomich claimed to have sent it to Nebraska, and promised to mail it back. Willis, a young man of 26 years, ascribes his failure to take a·receipt to lack of business acumen. We think that the explanation is reasonable. Having turned over a part of the proceeds realized from Boogaerts, it is not probable that he would hold out the rest, knowing that Tomich was protected by the note.

We therefore find that Tomich's contention that the $500 note had nothing to do with the last car of potatoes, but was given in settlement for the first two, absolutely fails, being completely contradicted by the agreement of settlement which we find he signed, and the check received and cashed by him in satisfaction of the amount found due in that settlement. This being true, under the doctrine of "false in one, false in all," we feel justified in rejecting plaintiff's version of the transaction.

We hesitate to differ with a trial judge on an issue of fact. In this case we are satisfied that he rendered judgment for plaintiff on the testimony of plaintiff's counsel that the note was given in satisfaction of the whole account. We have the utmost confidence in the good faith of counsel, but believe he was mistaken in this. He had been much harassed by the many disputes. He says the whole matter was a fright, and does not deny that when the parties finally left his office, he offered up fervent thanks that the matter was concluded. After struggling to unravel this record, we respond to that sentiment with a hearty amen. We agree that the note was a part of the whole settlement, but find that it was given only in security and that the obligation secured has been paid.

The judgment appealed from is accordingly reversed, and plaintiff's demands rejected, with costs of both courts.